Well, it looks like we're ready to go, and we have three appeals that are scheduled for oral argument this morning. And I see Ms. Casey is here for the appellate and Ms. Ching for the appellee. And, Ms. Casey, are you ready? Yes, Your Honor. You may proceed. Good morning, and may it please the Court. My name is Jessica Casey, and along with the law firm of Jones Day, I have the privilege of representing the petitioner appellants in this case. At its core, this case is about protecting the fundamental right to effective assistance of counsel. My clients sought asylum and withholding of removal with the assistance of an attorney they hired named Brad Alexander. But Mr. Alexander's performance in that case was so deficient that he ultimately pled guilty to violating multiple rules of professional conduct and was sanctioned by the Florida Bar, the Southern District of Florida, the Immigration Courts, the Department of Homeland Security, and most notably, the Board of Immigration Appeals. And in the years since, my clients have navigated the appellate system, mostly pro se, seeking their fair day in court. This morning, I will present two arguments to the Court. First, that the BIA erred in denying my client's motion for reconsideration because my clients correctly pointed out errors of fact and law in the BIA's order. Second, and alternatively, if this Court were to believe that my client's second motion is more properly viewed as a motion to reopen, that the BIA erred in denying that relief. This is my client's third appearance before this Court. In 2010, when he was originally denied asylum and withholding of removal, he appealed that decision to the Board of Immigration Appeals. The BIA considered many, but not all, of my client's arguments, and so he sought relief from this Court. This Court reviewed my client's case in what I'll refer to as the first appeal, PS Chaconne 1, and found that the BIA had wholly ignored my client's request for relief based on his ineffective assistance of counsel. This Court noted in that order that the exact types of issues that the immigration judge noted were the things that this Court would expect to see if my client's claim of ineffective assistance of counsel were true. That case went back to the BIA, and in 2013, the BIA finally considered the ineffective assistance of counsel claim. The BIA found twofold. First, that my client had not complied with the matter of Lazada requirements, and second, that he had not shown he was prejudiced by Mr. Alexander's actions. My client again appealed to this Court in what I'll refer to as PS Chaconne 2, and simultaneously filed a complaint with the Florida Bar. It's notable that that 2013 decision by the BIA still has not received substantive review from this Court. That's because, this Court may recall, just before the oral argument in PS Chaconne 2, Mr. Alexander pled guilty to violating multiple rules of professional conduct in Mr. PS Chaconne's case. He signed a guilty plea, he submitted himself to sanctions, and starting with the Florida Bar, he was suspended, and then a number of courts followed suit thereafter. That issue was extensively discussed by this Court in the second oral argument, and this Court expressed interest in remanding to the BIA for consideration of the new evidence, so that there would be a fulsome record before this Court. But the government urged, in that appeal, that this Court was powerless to do so, and that instead, Mr. PS Chaconne was required to dismiss his appeal, and go back to the BIA and file a motion to reopen. That's exactly what my client did. Twice, in fact, he filed two motions asking the BIA to consider this new evidence, and they have refused to do so. He seeks the relief from this Court now, in this procedural quagmire, where we're here again on another procedural appeal, still not actually reaching the substance of his ineffective assistance claim. Well, his original motion for asylum and for CAT relief was untimely. It was eight years too late, right? Your Honor, my client does concede his asylum relief is untimely. So why would it make a difference if his lawyer was ineffective? He didn't receive good representation. If his original motion was untimely, why would it, even if he was denied the effective assistance of counsel, why would it make a difference if his motion originally was untimely? And his motion to reopen was untimely too, right? Twofold, Your Honor. So first, to the original relief that my client requested. First, there are exceptions to the one-year rule for asylum. And second, my client also sought withholding of removal, which is not subject to a one-year time bar. But because of Mr. Alexander's ineffectiveness in that case, my client was not able to persuasively present that information to the immigration judge because Mr. Alexander admitted that he failed to communicate with my client, he failed to properly prepare him for the hearing, he failed to file the evidence by the call update, and failed to make a motion to accept that evidence out of time, all of which led to the immigration judge's finding of untimeliness and adverse credibility. And then, as to Your Honor's second question about the untimeliness of the motion to reopen, this Court has recognized the concept of equitable tolling on a motion to reopen. And my client would submit that the first motion should have been equitably tolled, even though it was filed more than two and a half years after the 2013 decision. Equitable tolling principles are commonly applied in cases like this, where my client for eight years now has been diligently pursuing the relief throughout the court system. Counsel, in 2010, Mr. Alexander no longer represented your client. That's right, Your Honor. And from 2013 on, he had counsel. And counsel actually, after the oral argument in 2015, before the 11th Circuit, dismissed that motion. And so, shouldn't we start there? Your Honor, first of all, my client did not hire Ms. Query and Mr. Weber until 2014, specifically for purposes of representing him in this Court the second time. We shouldn't give any weight to this. Judge Marcus appointed counsel. He had counsel from March 2014. And then my understanding is just that he fired that counsel and hired the counsel you're just referring to. I'm not aware of the counsel in the middle that was appointed by the Court, Your Honor. But I will concede that if that's in the record, that is true. I have the order here. It's in the record. So Judge Marcus signed the order appointing Kurt Obrant in Miami on March 19, 2014. And then I'm assuming that your client fired him and hired his own counsel in April 2014. Are we together? Yes, Your Honor. Okay. And then there was oral argument. And then the parties in 2015, just want to make sure I have the facts the way they were, filed joint motions to dismiss with prejudice after the oral argument. And I've listened to the oral argument tape, as you probably have too, and I would imagine that they filed a motion to dismiss changing how they were going to proceed. But I don't know that. Yes, Your Honor. Are we together? Yes. Okay. If Your Honor is suggesting, it sounds like you might be alluding to the argument I suspect the government will make that my client is barred now from raising the ineffective assistance claim due to the voluntary dismissal with prejudice, this court should not give any weight to that argument. It would be grossly inequitable for my client to now have proof that his attorney was sanctionably deficient and to try and put that evidence before this court in multiple ways. His attorney and this court discussed it at length in the last oral argument, and the government's position was that this court couldn't help my client in terms of remanding for express reconsideration of the evidence. That instead my client had to dismiss the appeal, that he had to give up the pursuit of that second appeal and go back to the BIA and present it to the BIA. And that's exactly what he did. And as I mentioned, it would be grossly inequitable for this court to say essentially a gotcha, that the government said he was required to dismiss his appeal and give up his rights there in order to put even stronger evidence of his claim. Proof positive. Well, the court never said anything. He just had oral argument, and then the court didn't issue an order. No, Your Honor. But there was discussion, as Your Honor listened during the oral argument, that the court was interested in remanding specifically for reconsideration. But the government cited a case, Al Najeer v. Ashcroft, and said that this court was powerless to do so. So at that point, my client was in the position of having this incredibly extraordinary evidence of ineffective assistance and really having no way to put it before the court.  procedural way to go about presenting this evidence to the court, and that's exactly what he did. Is that in the record? I'm sorry, is what in the record, Your Honor? The government's urging. Well, the government's position in the oral argument that the only way to pursue this information was to give up or, excuse me, just go back to the BIA and put it before the BIA because it wasn't properly before this court at that time. And so the BIA took into consideration his allegations regarding ineffective assistance of counsel. No, Your Honor. That's our whole point of our argument today, that the BIA essentially looked at both of those motions and said, we've already decided this issue and it wasn't in your favor. And so that's a decision that we're reviewing for an abuse of discretion. The motion to reconsider. We're reviewing pursuant to the standard of review as abuse of discretion. That's right, Your Honor. And so our position is that the BIA erred and abused its discretion in not reconsidering its first decision because after the first motion was denied, Mike. And that decision that we're reviewing for an abuse of discretion, the BIA said, we've already considered those issues before. That's right. We're not going to reconsider them again. That's right. And so, I mean, in order to find an abuse of discretion, we have to find that that decision is, what, arbitrary and capricious? Yes, Your Honor, and we believe that it was here because my client in the motion to, I'm sorry, Your Honor. Go ahead. My client in the motion to reconsideration reminded the BIA that it really had not done any new review of his claims in light of the new evidence, but my client also put forward new case law from this court that he may be entitled to a rebuttable presumption of prejudice. My client specifically cited to White v. Attorney General, which was a case that was decided by this court in 2014 after the BIA first looked at the issue, but before he was coming back to the court and seeking the motion to reopen. And the court completely ignored my client's suggestion that he was entitled to the rebuttable presumption. That issue was certainly not raised in the first motion, but was raised in the second motion, and that alone is a valid basis for the court to have reconsidered its earlier decision. In addition to that, Your Honor, we believe that the court in its first motion, or excuse me, in its first order, did not actually review the evidence that my client was putting forward. It's clear that they relied on their earlier analysis from 2013, which was a completely different fact set than what my client was presenting in 2015. And so for these reasons, we would request this court remand to the BIA for further proceedings. Thank you, Ms. Casey. Thank you. And we'll hear from the government. Ms. Cheng. May it please the court. My name is Linda Cheng on behalf of the U.S. Attorney General. This case has a long history of many agency decisions as well as decisions from this court. However, the only issue before the court today is whether the board abused its discretion in denying Petitioner's motion to reconsider when he merely repeated the same arguments, as Your Honor pointed out. There are a few points that I want to make in response to Petitioner's argument. First, with respect to the case of White, in that case I believe the attorney did not file a brief, in which case it was clearly that there was a fundamental fairness of Petitioner's right to a fundamentally fair hearing was impinged upon. Whereas here, the fact of the case is the documents were presented to the IJ. They were considered. They were summarized in his decision. Even if they were untimely submitted, the immigration judge nonetheless considered them. So there is nothing here that was not presented before the agency that Petitioner can point to. With respect to the other arguments that he makes... Well, it seems as if, just looking at the big picture here, the government says his motions were untimely and we factored all this, we've taken all this into consideration. But how do you address their argument that this Petitioner ought to be entitled to equitable tolling because it's clear he didn't get good representation? He has been diligent, at least from the time that he first filed his motion to reopen. He has been diligent. Why wouldn't the ineffective assistance of counsel that he received constitute an extraordinary circumstance sufficient to entitle him to equitable tolling? So with respect to equitable tolling, the board in its October 2015 decision denying the motion to reopen, which was untimely, specifically looked at that and denied it. It looked through the record and found that there was no due diligence because Petitioner already was aware and raised this claim of ineffective assistance of counsel in his May 2010 brief, in which case this court did remand for analysis on that. And the board did that in a 2013 decision. In that decision, just as a sidetrack, the board found that there was no compliance with Lozada, but nonetheless went on to analyze it for prejudice and did not find it. Now, moving forward, in the October 2015 decision again, it completed its analysis of equitable tolling and found that the suspension of Mr. Alexander by the board was not new evidence. It was something that had been ongoing. It cited two dates earlier where he had been suspended by the Florida State Bar, or the Supreme Court of Florida, as well as the Southern District Court of Florida. And there's no reason that he could show why he did not file that motion sooner then. The idea of his ineffective assistance of counsel claim being the extraordinary circumstance is not something new and that hindered him from bringing this untimely motion to reopen. As stated, he was aware of this in May of 2010 already, so it could not be used again as an excuse for equitable tolling at this point. Nonetheless, the court then further analyzed his claim for prejudice and still found none. And therefore, with respect to a successful and effective assistance of counsel claim, not only must he show compliance with Lozada, but also the resulting prejudice from that. And here, Petitioner just fails on that account. And presuming that this was a motion to reconsider as it was captioned, as it was styled, as it was argued, throughout his motion, he just fails to point to any error or fact of law in the board decision. And therefore, this petition for review should be denied. All right. I think we have the government's argument. Thank you, Ms. Chen. Thank you. We'll hear again from Ms. Casey. Thank you, Your Honor. If I may just briefly respond to the BIA's assertion that there is no prejudice in the case, as well as Ms. Chang's contention as well. My client has clearly shown that he was prejudiced by Mr. Alexander's deficient performance here. The standard for prejudice that this court announced is that the performance was so inadequate that there's a reasonable probability that but for that error, the outcome of the proceedings would have been different. And here— Did Mr. Alexander have anything to do with the untimely filing of the asylum application? No, Your Honor. But as I mentioned in my prior argument, there's also withholding of removal that's at issue. And there's no time bar with regard to withholding of removal. As this court recognized in the first appeal from Mr. P.S. Chacon, the exact issues that the IJ found in this case, that the testimony wasn't credible, that the newspaper articles my client said that he authored hadn't been shown to the court, that he hadn't proven the byline, hadn't proven the distribution, hadn't discussed sufficiently the radio program from St. Thomas, hadn't connected the dots for the court between the times that he was followed, the time that he was kidnapped and beaten, the condolence card that was sent to his place of work, and the other incidents that happened to him in Columbia. Those are all things that this court recognized you would expect to see if Mr. Alexander, as he admits he did, refused to prepare my client for the hearing, that he didn't reasonably communicate, that my client speaks a different language and wasn't—excuse me, the hearing, the first hearing with the IJ wasn't translated for him. And counsel, you would agree from March 2014 on your client had competent counsel? Yes, Your Honor, we do agree that he had competent counsel. We did note in our brief that for purposes, if this court were to look at the second motion and determine that it was more better viewed as a motion to reopen as opposed to a motion to reconsider— which you refer to as the second motion, which is the—I need to get dates on this— which is the motion that's before us right now, should be considered as a motion to reopen, not a motion for reconsideration. They're alternative arguments, Your Honor. We believe that under either standard, if the court treats it as it says on its face it's a motion to reconsider or if the court looks at the content and believes that it better comports with a motion to reopen, as other courts have done, that under either standard, the BIA erred in denying my client's relief. He's not only presented probative evidence of his ineffective assistance claim that was not available before these motions were filed, but he's also shown that he raised new arguments in the second motion that the BIA expressly refused to consider, just as it did in the first instance when this court said the BIA had wholly ignored my client's claim of ineffective assistance of counsel. They've continued to do so in two additional motions now. So we would request this court remand for further proceedings. Thank you. Thank you, Ms. Casey. Ms. Casey, were you appointed to represent? Yes, Your Honor. The court thanks you for your service. Thank you. Thank you.